# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3216

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Arvey H. Lyons, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 11, 2008
Filed: February 17, 2009

_____

Before LOKEN, Chief Judge, COLLOTON, Circuit Judge, and PIERSOL,[1] District
Judge.

_____

COLLOTON, Circuit Judge.

Arvey Lyons pled guilty to one count of conspiracy to commit fraud through the use of counterfeit and unauthorized access devices, in violation of 18 U.S.C. § 371, and one count of aiding and abetting aggravated identity theft, in violation of 18 U.S.C. § 1028A. The district court sentenced Lyons to 15 months' imprisonment on the conspiracy count, and to the 24-month mandatory minimum sentence for aggravated identity theft, with the sentences to run consecutively. Lyons appeals his

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

sentence, arguing that the district court incorrectly calculated the advisory guideline range by (1) overstating the amount of loss attributable to his conduct, (2) failing to find that he was a minor participant in the offense, and (3) imposing a two-level enhancement for the production or trafficking of a counterfeit access device, pursuant to USSG §2B1.1(10)(B). Because we conclude that the district court committed procedural error in calculating the advisory guideline range, we vacate the judgment and remand for resentencing.

I.

Between October 17, 2006, and November 3, 2006, in the St. Louis area, Lyons and co-defendant Angra Renee Fields used counterfeit credit cards to make purchases totaling more than $5,000. Fields purchased the credit cards and a fictitious driver's license in Los Angeles sometime before she moved to St. Louis in August 2006. While living in St. Louis, Fields lived with Lyons and used his vehicle for transportation. During the course of the conspiracy, Lyons or another man accompanied Fields to stores where Fields paid for merchandise with a counterfeit credit card and presented a driver's license bearing her image but the name of another person. Lyons and Fields were arrested on November 3, 2006, when Fields attempted to use a counterfeit credit card to make a purchase at a Lowe's home improvement store.

Lyons pled guilty to one count of conspiracy to commit access device fraud and one count of aiding and abetting aggravated identity theft. The United States Probation Office recommended in a presentence report (PSR) that the guideline sentence for the aggravated identity theft count was two years, as required by 18 U.S.C. § 1028A(a). *See* USSG § 2B1.6. For the conspiracy count, the PSR calculated a base offense level of 6 and recommended a two-level specific offense characteristic under USSG § 2B1.1(b)(1), because the loss exceeded $5,000. It further recommended an increase in the offense level to 12 under the specific offense

characteristic of § 2B1.1(b)(10)(B)(i), on the ground that the offense involved "the production or trafficking of any unauthorized access device or counterfeit access device." Finally, the probation office suggested a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a), with a resulting total offense level of 10.

Lyons filed several objections to the PSR. Of relevance here, Lyons objected to the two-level adjustment under § 2B1.1(b)(1), contending that the loss did not exceed $5,000. At sentencing, Lyons argued that he was in California for nine days during the two-week conspiracy, "going to doctors, buying shoes, going to jewelry stores and buying lots of gift cards that could then be resold at a reduced price on the street." He urged that the purchases made by Fields during this nine-day period were part of a separate conspiracy in which Lyons was not involved. The district court concluded, however, that there was only one conspiracy, and that Lyons was responsible for the total loss that occurred during the two-week period. The court observed that Lyons provided Fields with a vehicle to use while he was out of town so that she could continue to make fraudulent purchases, and that when Lyons returned to St. Louis, he resumed his role in the conspiracy.

Lyons also asserted that he was less culpable than Fields and thus should receive a two-level downward adjustment as a minor participant under USSG § 3B1.2. The government argued that Lyons had produced no evidence to support such an adjustment, and that the evidence of record showed that Lyons played an integral role in the conspiracy. The district court denied this objection, finding that Lyons and Fields were "very much equal in this." The court again emphasized that Lyons provided Fields with transportation, and stated that the two were "very much together in carrying out the actions in the specific overt acts."

Finally, Lyons objected to the increase in offense level pursuant to § 2B1.1(b)(10)(B)(i). Lyons argued that there was no evidence that he or Fields were

engaged in the "production or trafficking of any . . . unauthorized access device or counterfeit access device." USSG § 2B1.1(b)(10)(B)(i). The government responded that because Fields admitted that she purchased the counterfeit credit card in Los Angeles, both Fields and Lyons (as a member of the conspiracy) were involved in the transfer and trafficking of the credit card. The government also urged that Lyons was responsible for the production of the credit card, because the card "was produced unlawfully because the company did not produce it." The district court denied Lyons's objection, concluding that when "looking at the entire transaction of the device," the specific offense characteristic was appropriately applied.

The district court thus calculated a total offense level of 10. Based on an undisputed criminal history category of IV, the court arrived at an advisory guideline range of 15-21 months. After considering the factors set forth in 18 U.S.C. § 3553(a), the court sentenced Lyons to a total of 39 months' imprisonment – 15 months for conspiracy to commit access device fraud and a consecutive 24 months for aggravated identity theft.

## II.

Lyons raises several challenges to the district court's calculation of the advisory guideline range. We review the court's factual findings for clear error and its interpretation and application of the guidelines *de novo*. *United States v. Pate*, 518 F.3d 972, 975 (8th Cir. 2008).

First, Lyons contends that the district court erred by finding a loss amount of more than $5,000. Lyons does not dispute that more than $5,000 was charged to the credit cards, but renews his argument that he was not responsible for a majority of the charges made by Fields when Lyons was not in St. Louis. Lyons again emphasizes that he was in California when some of the purchases were made.

Under the advisory guidelines, Lyons is responsible under principles of "relevant conduct" for acts of others that were taken in furtherance of a jointly undertaken criminal activity, if they were reasonably foreseeable by Lyons in connection with the criminal activity. *United States v. Delgado-Paz*, 506 F.3d 652, 654 (8th Cir. 2007); USSG § 1B1.3(a)(1)(B) & comment. (n.2). If that standard is satisfied, then Lyons may be held accountable for certain purchases made during the conspiracy that inured solely to the benefit of Fields.

We conclude that the evidence adequately supports the district court's finding that Lyons was accountable for a loss amount of more than $5,000. Lyons and Fields lived together during the course of the conspiracy, and Fields was dependent on Lyons for her transportation. On several occasions, Lyons drove Fields to a store where Lyons selected merchandise for Fields to purchase with her counterfeit card. Lyons also recruited one of his employees to accompany Fields on one occasion so that the employee could select lumber for Lyons to use in his business of refurbishing homes. Based on the close relationship between Lyons and Fields, and Lyons's "substantial level of commitment to the conspiracy," *United States* v. *Pizano*, 421 F.3d 707, 734 (8th Cir. 2005), it was reasonably foreseeable that Fields would make purchases in addition to those that she made for Lyons. Because the district court's loss determination is "plausible in light of the record as a whole," *United States v. Coon*, 187 F.3d 888, 899 (8th Cir. 1999) (internal quotation omitted), it is not clearly erroneous. *See United States v. Harvey*, 413 F.3d 850, 854 (8th Cir. 2005) (concluding that co-conspirator's actions were reasonably foreseeable where "the defendants shared a vehicle and an apartment address to further their criminal endeavor"); *United States v. Gibreal*, 184 F. App'x 592, 593 (8th Cir. 2006) (per curiam) (unpublished) ("The losses were foreseeable to Gibreal since he accompanied Sheffield during several of her actions, and Gibreal demonstrated his commitment to the conspiracy by providing transportation on several occasions.").

Second, Lyons contends that the district court clearly erred in denying him a downward adjustment as a minor participant. "A reduction may be appropriate if the defendant is 'less culpable than most other participants,' U.S.S.G. § 3B1.2, but is unwarranted if the defendant was 'deeply involved' in the offense." *United States v. Godinez*, 474 F.3d 1039, 1042 (8th Cir. 2007). It is the defendant's burden to establish that a minor-participant reduction is warranted. *United States v. Pruneda*, 518 F.3d 597, 606 (8th Cir. 2008). Other than to deny generally that he was responsible for slightly more than half of the purchases that Fields made, Lyons did not produce evidence to contradict his substantial involvement in this conspiracy. The district court found that the two participants were "very much equal" members of the conspiracy, and the record does not persuade us that this determination was mistaken. The district court did not clearly err in finding that Lyons was not a minor participant.

Third, Lyons argues that the district court erred by increasing his offense level to 12, pursuant to USSG § 2B1.1(b)(10)(B), on the ground that the conspiracy involved "the production or trafficking" of a counterfeit access device. On this point, we agree with Lyons.

A specific offense characteristic set forth in USSG § 2B1.1(b)(10)(B)(i) provides that if the defendant's fraud offense involved "the production or trafficking of any . . . unauthorized access device or counterfeit access device," then the court should increase the defendant's offense level to 12. To avoid double counting of relevant conduct, however, the guideline concerning aggravated identity theft limits the application of § 2B1.1(b)(10). The commentary to USSG § 2B1.6 directs that certain specific offense characteristics do not apply when the court imposes a sentence for aggravated identity theft "in conjunction with a sentence for an underlying offense," *id*., comment. (n.2), that is, a felony offense during and in relation to which the defendant knowingly transferred, possessed, or used a means of identification of another person. *See* 18 U.S.C. § 1028A(a)(1). In that situation, the court must not "apply any specific offense characteristic for the transfer, possession, or use of a

means of identification when determining the sentence for the underlying offense." USSG § 2B1.6, comment. (n.2). Given that the plain meaning of trafficking involves a transfer, the enhancement in § 2B1.1(b)(10)(B)(i) for trafficking of an unauthorized access device is one such specific offense characteristic that cannot be applied. *United States v. Jones*, 551 F.3d 19, 25 (1st Cir. 2008); *see also* 18 U.S.C. § 1029(e)(5) (defining "traffic" to include "transfer").

The government contends that the district court properly applied the enhancement, because the conspiracy count to which Lyons pled guilty involved not only a counterfeit driver's license, but also the production and trafficking of counterfeit credit cards, which the government implies are not a "means of identification" that would trigger application note 2 of § 2B1.6. (Appellee's Br. 15). This argument fails. A "means of identification" includes "any . . . access device (as defined in section 1029(e))." 18 U.S.C. § 1028(d)(7)(D). A counterfeit credit card is an "access device," because it is a "card . . . that can be used . . . to obtain money, goods, services, or any other thing of value." 18 U.S.C. § 1029(e)(1); *see also id.* § 1029(e)(2) (defining "counterfeit access device" as including "any access device that is counterfeit"). It follows that a counterfeit credit card is a "means of identification." Therefore, when sentencing for aggravated identity theft in conjunction with an underlying offense that involves the transfer, possession or use of counterfeit credit cards, the district court should not apply the specific offense characteristic of § 2B1.1(10)(B) in determining the sentence for the underlying offense.

In this case, moreover, there was insufficient evidence to establish that Lyons was accountable for trafficking in an unauthorized or counterfeit access device. The only evidence of trafficking was that Fields purchased the counterfeit credit cards in California, and that the cards were therefore transferred or trafficked at the time of purchase. The government conceded at oral argument, however, that this alleged trafficking by Fields occurred *before* Lyons joined the conspiracy. Under principles of relevant conduct, a defendant is not responsible under the sentencing guidelines for

"the conduct of members of a conspiracy prior to the defendant's joining the conspiracy, even if the defendant knows of that conduct." USSG § 1B1.3, comment. (n.2); *see United States v. Cain*, 128 F.3d 1249, 1253 (8th Cir. 1997). We conclude, therefore, that the evidence did not support a finding that Lyons's offense involved the "trafficking of any . . . unauthorized access device or counterfeit access device," within the meaning of USSG § 2B1.1(b)(10)(B)(i).[2]

At oral argument, the government suggested that the district court's ruling could be sustained on the ground that Lyons's offense involved the *production* of an unauthorized access device or counterfeit access device, because production is not conduct encompassed by the prohibition on double-counting in the commentary to USSG § 2B1.6. *See Jones*, 551 F.3d at 25-26; *United States v. Sharapka*, 526 F.3d 58, 62 (1st Cir. 2008). The government asserts that Fields assisted in the production of the credit cards while she was in California, and that Lyons is accountable for that conduct. As with the allegations regarding trafficking, however, this contention about production relates to conduct that occurred before Lyons joined the conspiracy. Whatever Lyons's accountability may be under the substantive law of conspiracy, the sentencing guidelines provide that Lyons's relevant conduct does not include Fields's conduct in California. USSG § 1B1.3, comment. (n.2).

_____

[2]The count of aggravated identity theft on which Lyons was sentenced (Count Seven) charged that he committed the offense during and in relation to a substantive violation of 18 U.S.C. § 1029(a)(1), which prohibits the knowing production, use, or trafficking in counterfeit access devices with intent to defraud. The other count (Count One) charged a conspiracy to defraud by using a counterfeit access device, in violation of 18 U.S.C. § 371. As the fraud offense on which Lyons was sentenced was a conspiracy to defraud rather than the substantive offense of aggravated identify theft alleged in Count Seven, there is some question whether the conspiracy offense, strictly speaking, is an "underlying offense" described in the prohibition on double counting. *See* USSG § 2B1.6, comment. (n.2). The government does not raise this point, and particularly in view of our alternative conclusion that Lyons is not accountable for trafficking in access devices, we need not consider the issue.

Because the government failed to meet its burden to prove the applicability of the specific offense characteristic of § 2B1.1(b)(10)(B)(i), the district court committed procedural error in calculating the advisory guideline range. *See Gall v. United States*, 128 S. Ct. 586, 597 (8th Cir. 2007). Without the enhancement, Lyons's adjusted offense level would have been 6 rather than 10, and the advisory sentencing range would have been 6-12 months, rather than 15-21 months. The government does not contend that this error was harmless, and there is no clear indication in the record that the district court would have imposed the same sentence if it had used the correct advisory range as the starting point for its analysis. *See United States v. Spikes*, 543 F.3d 1021, 1025-26 (8th Cir. 2008).

For these reasons, we vacate the judgment of the district court and remand for resentencing.

_____