# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-3105

_____

United States of America

*Plaintiff - Appellee*

v.

Terri Killen

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: May 12, 2014
Filed: August 5, 2014

_____

Before RILEY, Chief Judge, BEAM and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Terri Killen pleaded guilty to one count of making a false statement to the government, in violation of 18 U.S.C. § 1001(a)(2), in connection with her receipt of Supplemental Security Income (SSI) benefits from the Social Security Administration

(SSA). The district court[1] sentenced Killen to 18 months' imprisonment followed by three years of supervised release. On appeal, Killen challenges the district court's use of intended loss rather than actual loss when calculating her offense level at sentencing. We affirm.

## I. *Background*

In 2006, Killen applied for SSI and ultimately began receiving it in 2008. SSI recipients have a duty to report any changes in living arrangements, income, or support to the SSA. After conducting disability reviews on Killen in 2010 and 2011, the SSA discovered that Killen had falsely claimed that she had no bank accounts. Killen and her husband actually owned a bank account where Killen had withdrawn up to $217,250 while simultaneously receiving SSI. She never reported the bank account or the withdrawals to the SSA. She also failed to report over $100,000 in gambling winnings, income from minor services that she had performed, and changes in her living arrangements.

In August 2012, a grand jury indicted Killen with one count of concealing her living arrangement and support from the SSA, in violation of 42 U.S.C. § 1383a(a)(3)(A), and two counts of making a false statement, in violation of 18 U.S.C. § 1001(a)(2). On January 4, 2013, Killen pleaded guilty to one count of making a false statement. The government agreed to dismiss the remaining charges.

In calculating the amount of loss that Killen cost the government, the presentence report (PSR) noted that Killen fraudulently received $14,840 in SSI benefits. It also provided that, if her concealment remained undiscovered, Killen would have continued to receive $674 each month until she turned 65. Killen would have received benefits for almost 14 more years, accruing an additional $110,536 in

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

illegal benefits. Thus, if her scheme were fully realized, the government would incur a total loss of $125,376. Using that figure, Killen's PSR recommended a ten-level increase in her offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(F).

Both the government and Killen objected to using the intended loss for calculating the amount of loss. The government contended that the loss should reflect only the actual loss, which would have resulted in only a four-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(C). However, the government never objected to the calculation of the actual and intended losses. Killen "object[ed] to the calculation of the amount of the loss as being $132,636.00[2] and join[ed] with the Government in its response to said paragraphs of the [PSR]." She added no additional argument.

Despite both parties' objections, the district court determined that intended loss governed rather than actual loss. The district court explained:

> The first question is whether the loss or the intended loss governs, and there's Eighth Circuit case law on this that talks about intended loss in scenarios like this one, including up to the point where the benefits would have stopped.
>
> Now, I know the Government and the defendant both have urged a different calculation than the presentence report contained, and I have previously, in other cases, gone with a different calculation, but only in cases where the person who was obtaining falsely those benefits made some effort to notify the agency that they were getting those benefits in error and in those kinds of cases continued to get benefits.

---

[2]It is unclear how Killen and the government arrived at $132,636.00 when the PSR calculated a total loss of $125,376. This difference does not affect Killen's sentence because any amount between $120,000 and $200,000 results in a ten-level increase under U.S.S.G. § 2B1.1(b)(1).

And so my analysis was, well, that person really didn't intend to continue getting benefits forever, they took some steps to try and stop the benefits, and it was Social Security in that case as well continued to give them the benefits anyway. But we don't have that here. We have no reason to believe that Ms. Killen ever intended to stop those benefits.

She wasn't going to let them know that the husband moved back in, if he was ever out. She made no effort to advise them of the various scenarios that impacted them, like enormous gambling winnings, over $137,000 in gambling winnings during the same time she was taking these benefits. You know, the putting liens on her friends' houses to make them pay her, you know, that didn't get recorded anywhere. This, you know, fraud that's happening with the food cards, the food stamps, she didn't report any of that. You know, she tells them, at least according to the information in the presentence report, that her daughter is living with them—or with her and her daughter's not.

But, essentially, there's nothing here that would indicate to me that she intended that loss to stop. I think she intended to continue collecting, and I find by a preponderance of the evidence that it was reasonably foreseeable to her and she intended to continue collecting money as long as she could and so that the intended loss from her standpoint was as calculated in the Presentence Investigation Report.

And I rely on the Frisch case being the primary one here on that analysis . . ., and it's a case that was cited by the probation office in the Presentence Investigation Report. And so I find that the amount of loss or intended loss here is $110,156.[3]

Thus, unlike the PSR, the district court considered the amount of loss here as the intended loss rather than the sum of the actual and intended losses. The district court's calculation resulted in an eight-level offense level increase pursuant to U.S.S.G.

---

[3]The district court likely meant $110,536 as noted in the PSR. Again, the difference of a few hundred dollars does not affect the offense level here. *See* U.S.S.G. § 2B1.1(b)(1).

§ 2B1.1(b)(1)(E), leading to an offense level of 14 and a criminal history category of I. The resulting Guidelines range was 15–21 months' imprisonment. The district court sentenced Killen to 18 months' imprisonment followed by three years of supervised release. The district court also ordered her to pay $14,840 in restitution to the SSA. Had the district court sustained the parties' objection to the use of intended loss, Killen's offense level would have been 8, resulting in a Guidelines range of 0–6 months' imprisonment.

## II. *Discussion*

"We review the district court's interpretation of loss as used in the Guidelines de novo, and its calculation of loss for clear error." *United States v. Hodge*, 588 F.3d 970, 973 (8th Cir. 2009) (quotation and citation omitted). "The district court's method for calculating the amount of loss must be reasonable, but the loss need not be determined with precision." *Id.* (quotation and citation omitted). We will affirm a loss calculation "unless it is not supported by substantial evidence, was based on an erroneous view of the law, or we have a firm conviction that there was a mistake after reviewing the entire record." *Id.* (quotation, alteration, and citations omitted). We "give the district court particular deference on the issue of loss calculation." *United States v. Levine*, 477 F.3d 596, 604 (8th Cir. 2007) (quotation and citation omitted). The government shoulders the burden to prove the amount of loss by a preponderance of the evidence. *Hodge*, 588 F.3d at 973.

For crimes involving theft, which can include violations of 18 U.S.C. § 1001(a)(2), the Guidelines provide that a defendant's offense level varies based on the amount of loss involved in the crime. *See* U.S.S.G. § 2B1.1(b). The Guidelines also provide that, as a general rule, "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). The comment note defines "actual loss" as "reasonably foreseeable pecuniary harm that resulted from the offense" and "intended loss" as "the pecuniary harm that was intended to result from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i)–(ii).

The district court relied on one of our recent decisions involving the amount of loss in disability-benefit cases. *See United States v. Frisch*, 704 F.3d 541 (8th Cir. 2013). In that case, Frisch pleaded guilty to concealment from the SSA when he wrongfully obtained disability benefits. *Id.* at 542. Frisch received $86,160 in wrongful benefits. *Id.* The PSR writer noted that Frisch would have continued to receive wrongful benefits until age 66, so he would have received an additional $38,610 if he had escaped detection. *Id.* at 542–43. This resulted in an intended loss of $124,770. *Id.* at 543. The government asked the district court to apply the intended loss amount rather than the actual loss. *Id.* The district court used the intended loss in its offense level calculation. *Id.* We affirmed, noting that "[w]hen calculating intended loss, the appropriate inquiry is what the loss would have been if the defendant had not been caught." *Id.* at 544 (citing *United States v. Henderson*, 416 F.3d 686, 695 (8th Cir. 2005); *United States v. Rettenberger*, 344 F.3d 702, 708 (7th Cir. 2003)). We concluded that the intended loss calculation applies because "[n]othing beyond Frisch's statements indicate that he would have ceased accepting payments before [he was caught], and the district court could reasonably conclude that he intended to continue doing so. Thus, the district court did not procedurally err in accepting the government's intended loss calculation." *Id.*

Killen attempts to distinguish *Frisch* by arguing that the government there "did not stand silent" but actually proved the intended loss amount. Here, the government agreed with Killen before the district court that the actual loss should apply. In other words, Killen argues that the district court improperly shifted the government's burden of proving loss to Killen to disprove the loss.

We reject Killen's attempt to distinguish *Frisch*. First, *Frisch* demonstrates that we have allowed use of intended loss in this factual context. Second, although the government argued for a different result below, we have recognized that the government may argue in support of a district court's decision despite its earlier objections to such a decision. *See United States v. Winters*, 411 F.3d 967, 975 (8th

-6-

Cir. 2005). Third, the district court did not shift the burden of proof to Killen. The district court merely based the amount of intended loss on PSR's calculation. *See United States v. Douglas*, 646 F.3d 1134, 1137 (8th Cir. 2011) ("If a defendant objects only to the PSR's recommendation, but not to the facts themselves, the court may accept the facts as true and rely on the unobjected-to facts in determining whether to impose an enhancement.").

Here, Killen objected only to the use of intended loss and not the actual calculation of that intended loss; therefore, the district court could appropriately use that calculation in determining the amount of loss. Consequently, the district court did not err in using the calculated intended loss.

Killen also argues that the government, arguing in favor of actual loss below, never proved that Killen subjectively intended to continue to receive SSI benefits. *See United States v. Manatau*, 647 F.3d 1048, 1056 (10th Cir. 2011) ("[W]e hold that the *mens rea* standard for 'intended losses' is just what the plain language and structure of the guidelines suggest—requiring an inquiry into the defendant's purpose."). However, we have recognized in this context that a district court may reasonably conclude that the defendant intended continued receipt of illegal benefits until retirement without additional mens rea evidence. *Frisch*, 704 F.3d at 544. Even *Manatau* notes that "'intended loss' can be shown by looking to what loss was 'expected' because . . . a person is presumed to have 'intended the natural and probable consequences of his or her actions.'" *Manatau*, 647 F.3d at 1055 (quoting *United States v. McCoy*, 508 F.3d 74, 79 n.6 (1st Cir. 2007)).

Killen received a continuous, routine amount each month—$674.The district court needed no additional evidence. She intended to keep every dollar of the monthly payment. Thus, unlike in *Manatau*, the district court properly inferred from Killen's conduct that she intended continued receipt of these benefits until retirement without additional mens rea evidence.

-7-

Finally, Killen contends that Comment Note 3(F)(ii), which applies specifically in government-benefits cases, results in a loss that is "not less than the value of *what was obtained.*" *See United States v. Tupone*, 442 F.3d 145 (3d Cir. 2006). We reject this argument. Comment Note 3(F)(ii) provides that

> [i]n a case involving government benefits (e.g., grants, loans, entitlement program payments), loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses, as the case may be. For example, if the defendant was the intended recipient of food stamps having a value of $100 but fraudulently received food stamps having a value of $150, loss is $50.

U.S.S.G. § 2B1.1 cmt. n.3(F)(ii). Comment Note 3(F)(ii) applies in a specific government-benefits circumstance—where the defendant receives both proper and improper payments. Here, all of Killen's payments were improper, so 3(F)(ii) does not apply. Or, if it does apply, we would subtract the proper payments ($0) from the improper payments ($14,840) to obtain an actual loss of $14,840. Comment Note 3(F)(ii) does not mandate an actual loss calculation rather than an intended loss calculation. Furthermore, the district court's intended loss calculation is consistent with Killen's argument that the amount of loss "is not less than the value of what was obtained."

For these reasons, the district court properly determined that it could calculate Killen's offense level using intended rather than actual loss. This position is consistent with the Guidelines and our precedent.

### III. *Conclusion*

We affirm the judgment of the district court.

_____