# United States Court of Appeals
### For the Eighth Circuit
_____

No. 21-2346
_____

United States of America

*Plaintiff - Appellee*

v.

James Darron Miller, Jr.

*Defendant - Appellant*

_____

No. 21-2884
_____

United States of America

*Plaintiff - Appellee*

v.

Antonio Denard Few

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: March 18, 2022
Filed: July 28, 2022
_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

James Miller and Antonio Few participated in a Texas-based conspiracy to burglarize ATMs in Arkansas and Oklahoma, among other states. The district court[1] sentenced Miller to 36 months in prison, 3 years of supervised release, and $84,626 in restitution. It sentenced Few to 60 months in prison, 3 years of supervised release, and $84,626 in restitution. In this consolidated appeal, both defendants challenge the procedural reasonableness of their sentences, Miller appeals his sentence as substantively unreasonable, and Few challenges the restitution amount. We affirm.

I.

Around 3:00 one morning, four people wearing all black clothing and masks broke into the Conway, Arkansas Walmart. Using yellow crowbars, they pried open the ATM, stole $7,520 from inside it, and fled in a dark, late model SUV. The break-in resulted in $5,204 worth of damage to the ATM.

An hour and a half later, four people wearing all black clothing and masks burglarized a Shell Superstop in Benton, Arkansas. They again used yellow crowbars, this time uprooting and stealing the ATM itself, and broke into the safe and cash register. Like in the Walmart burglary, the getaway car was a dark, late model SUV. Though the ATM was recovered the next morning near New Boston, Texas, the total loss to the store from the theft and damage was $9,600.

A few days later, police in Texas responded to another Walmart break-in. This time, they caught the getaway car driver. Her phone records linked her to the Arkansas burglaries, and to co-conspirators James Miller, Chris Burns, and Antonio

---

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

Few. A multistate FBI investigation connected the group to a rash of ATM burglaries in Texas, Oklahoma, and Arkansas.

Miller and Few were charged with two counts of transporting stolen money, 18 U.S.C. § 2314, and one count of conspiracy to transport stolen money, 18 U.S.C. § 371. The Government submitted evidence of the losses from the Arkansas and Oklahoma burglaries. In Arkansas, the group stole $12,324 cash, and the cost to replace the damaged ATMs was calculated to be $10,408, resulting in a total loss of $22,324. The Oklahoma losses totaled $62,302: $46,690 in stolen cash and $15,612 in ATM damage.

A.

Miller pleaded guilty to all three counts. His Guidelines range was 8–14 months in prison, and the Government moved for an upward variance. In support, the Government introduced testimony from FBI Special Agent Grant Permenter, who was part of the ATM break-in investigation. He testified to Miller's membership in an organization that committed ATM burglaries in Arkansas, Oklahoma, and Texas; incriminating evidence from Miller's home and social media posts; and cell phone data placing Miller near the burglaries. The district court granted the variance and sentenced Miller to 36 months in prison, 3 years of supervised release, and $84,626 restitution.

B.

At his plea hearing, Few objected to the factual basis for the conspiracy count. The indictment alleged that Few conspired with co-defendants in Texas to commit burglaries in Oklahoma and the Eastern District of Arkansas. Few denied involvement in the Oklahoma burglaries. The Government did not object, and was satisfied to resolve the question of whether the Oklahoma burglaries were "relevant conduct" at sentencing. Few then pleaded guilty to all three counts.

At sentencing, Few again denied engaging in criminal conduct in Oklahoma and objected to including the Oklahoma burglaries in the Guidelines loss and restitution amounts. The district court overruled his objections. Special Agent Permenter testified to evidence connecting Few to the Texas, Oklahoma, and Arkansas burglaries, including: (1) a confidential informant's statement that he accompanied Few to burglaries in Oklahoma and Arkansas; (2) a co-defendant's identification of Few as an organizer of the conspiracy; and (3) cell phone tower data placing Few near the Arkansas and Oklahoma burglaries. The district court found that the total loss attributable to Few's conduct in the Arkansas and Oklahoma burglaries was $84,626, resulting in a 6-point enhancement under U.S.S.G. § 2B1.1(b)(1)(D). It sentenced Few to 60 months in prison, 3 years of supervised release, and $84,626 restitution.

II.

A.

Miller argues that the district court procedurally erred in failing to explain his sentence. Because he did not raise this objection at sentencing, we review the district court's explanation of its sentence for plain error. *United States v. White*, 863 F.3d 1016, 1021 (8th Cir. 2017). Plain error requires "(1) [an] error, (2) that is plain, and (3) that affects substantial rights." *United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc) (citation omitted).

"All that is required for an adequate explanation is for the sentencing judge to set forth enough to satisfy us that he has considered the parties' arguments and has a reasoned basis for the sentence imposed." *United States v. Mays*, 993 F.3d 607, 619 (8th Cir. 2021) (citation omitted) (cleaned up). Miller argues that the court didn't adequately explain the variance or cite the 18 U.S.C. § 3553(a) factors. But "[w]e do not require a district court to provide a mechanical recitation of the § 3353(a) factors when determining a sentence. Rather, it simply must be clear from the record that the district court actually considered the § 3553(a) factors in

determining the sentence." *United States v. Walking Eagle*, 553 F.3d 654, 659 (8th Cir. 2009) (citation omitted). We are satisfied that it did. The court made clear that it believed the Guidelines range didn't sufficiently capture the seriousness of the offense:

> [I]n no world can you come and pull an ATM out of the ground and go rob another one and conspire to rob others and have your getaway, like in the Bonnie and Clyde days trying to get back to Texas and it only be a sentence of eight to 14 months. In no world does that make sense.

It also explained that the Guidelines underrepresented Miller's criminal history, which included multiple convictions for break-ins and multiple similar charges that "just went away." The explanation in the record is adequate.

B.

Miller also challenges the substantive reasonableness of the upward variance, arguing that the district court did not find that his criminal history was underrepresented, and that the Guidelines adequately captured the severity of his conduct. Because Miller raised this objection at sentencing, we review for abuse of discretion. *See United States v. Jones*, 563 F.3d 725, 730 (8th Cir. 2009). "The district court may vary upward from the Guidelines range if the extent of the deviation is supported by the § 3553(a) factors." *United States v. Drew*, 9 F.4th 718, 725 (8th Cir. 2021) (citation omitted) (cleaned up). "While a district court may consider factors already taken into account in the Guidelines range, substantial variances based upon factors already taken into account seriously undermine sentencing uniformity." *Id.* (citation omitted) (cleaned up). Miller's Guidelines range was 8–14 months, and the district court sentenced him to 36 months—a 22-month increase from the top of the range. But the district court distinguished the severity of Miller's offense and criminal history from what was reflected in the Guidelines. It compared the historical understanding of federal money-related and white-collar crimes as "not . . . all that bad" with Miller's conduct of "robbing

-5-

people" and ripping ATMs "out of the ground." It also explained that Miller's single prior burglary conviction didn't adequately reflect his extensive history of theft, burglary, and participation in organized crimes. Given these considerations, the court did not abuse its discretion.

## C.

Miller's sentence is affirmed.

## III.

## A.

Few first argues that the district court procedurally erred by including the Oklahoma burglaries in its Guidelines loss amount calculation. We review the district court's interpretation of "loss" for Guidelines purposes *de novo*, and its loss calculation for clear error. *United States v. Killen*, 761 F.3d 945, 948 (8th Cir. 2014). A district court's loss determination is not clearly erroneous if it "is plausible in light of the record as a whole." *United States v. Lyons*, 556 F.3d 703, 707 (8th Cir. 2009) (citation omitted).

The Guidelines prescribe a six-level enhancement for certain offenses if the loss amount is between \$40,000–\$95,000. U.S.S.G. § 2B1.1(b)(1)(D)–(E). "[A] sentencing court must include in its calculation any losses caused by relevant conduct." *United States v. Gaye*, 902 F.3d 780, 789 (8th Cir. 2018) (citation omitted). "In the case of a jointly undertaken criminal activity, relevant conduct includes 'all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity' and that 'occurred during the commission of the offense of conviction.'" *Id.* (quoting U.S.S.G. § 1B1.3(a)(1)(B)) (cleaned up). A co-conspirator's actions can count as relevant conduct, even if the defendant wasn't present when the crime occurred. *See Lyons*,

556 F.3d at 707.  The focus of our analysis is on the scope of the defendant's participation, not on the scope of the conspiracy as a whole.  *Gaye*, 902 F.3d at 790. It is the Government's burden to prove the loss amount by a preponderance of the evidence.  *Killen*, 761 F.3d at 949.

It was not clearly erroneous to include the Oklahoma burglaries in the loss amount.  At sentencing, the Government presented evidence that Few's phone location data placed him in Oklahoma at the time of the burglaries, and that a confidential informant went with Few to Oklahoma to commit ATM thefts.  The district court found that Few was a leader of the group responsible for the Arkansas and Oklahoma ATM thefts.  Few argued at sentencing that there was no direct evidence that he committed the Oklahoma burglaries.  But the record as a whole— including a co-conspirator's statement that they drove to Oklahoma with Few to break into ATMs—supports the district court's decision to hold him responsible for the conspiracy's crimes there, regardless of whether he was present when they were committed.

## B.

Few next challenges including the Oklahoma losses in the restitution amount. Under the Mandatory Victim Restitution Act, "[d]efendants convicted of property crimes must 'make restitution to the victims of the offense.'"  *United States v. Monastyrski*, 742 F. App'x 156, 157 (8th Cir. 2018) (per curiam) (quoting 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii)) (cleaned up).  "We review a restitution order for abuse of discretion and the district court's application of the restitution statute de novo." *United States v. Reichow*, 416 F.3d 802, 804 (8th Cir. 2005).

"We look to the scope of the indictment to determine whether an award is eligible to be included in a restitution order."  *United States v. Benedict*, 855 F.3d 880, 887 (8th Cir. 2018) (citation omitted).  Few was charged with conspiracy to transport stolen property, and the indictment specifically charged thefts that took place in Oklahoma.  Where the defendant's crime "involves as an element a scheme,

conspiracy, or pattern of criminal activity," the restitution award can include losses for any victim "directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern," even if the loss isn't specifically listed in the indictment. 18 U.S.C. § 3663A(a)(2); *Benedict*, 855 F.3d at 887. The evidence at sentencing showed that the Oklahoma burglaries were "criminal conduct which [Few] and his coconspirators undertook in the course of the . . . conspiracy." *Benedict*, 855 F.3d at 887 (quotation omitted). So the district court did not err in ordering restitution for the Oklahoma losses.

## C.

Finally, Few claims that the district court erred by calculating the loss amount[2] based on the replacement value of the damaged ATMs, rather than their fair market value. Because Few failed to raise this issue below, we review for plain error. *Pirani*, 406 F.3d at 549.

Even assuming that the district court erred by using the replacement value instead of the fair market value, that error is not plain. The MVRA instructs that the amount of restitution is "the greater of—(I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of the property on the date of sentencing." 18 U.S.C. § 3663A(b)(1)(B)(i). "[I]t declines to prescribe any particular method to be used in determining the 'value' of lost or damaged property." *United States v. Frazier*, 651 F.3d 899, 904 (8th Cir. 2011). Instead, it leaves the valuation method to the sentencing court's discretion. *Id.* Although "[i]n most circumstances, fair market value will be the measure most apt to serve th[e] statutory

---

[2]It is not clear from Few's brief whether his objection to the valuation method applies to just the restitution amount, or to the Guidelines loss calculation as well. But because the total amount of cash stolen—without including any loss attributable to ATM damage—places Few over the $40,000 threshold for the 6-point enhancement, changing the ATM valuation method would not affect Few's Guidelines range. Accordingly, we limit our valuation analysis to the restitution amount.

purpose" of compensating the victim's actual losses, replacement value is by no means off the table. *Id.* Few does not offer any concrete reasons why replacement value is a wholly inappropriate valuation method for ATMs. Because the district court's valuation method is within the range of conventional options permitted under our caselaw, it cannot be said that any error in this case was "plain."

D.

Few's sentence is affirmed.

_____