# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3832

_____

United States of America

*Plaintiff - Appellee*

v.

Reynaldo Roblero-Ramirez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: April 10, 2013
Filed: June 17, 2013

_____

Before RILEY, Chief Judge, BYE and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

Reynaldo Roblero-Ramirez pled guilty to reentering the United States illegally after being deported for an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). The district court imposed a sixteen level sentence enhancement under United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 2L1.2(b)(1)(A)(ii) after finding that Roblero-Ramirez previously had been convicted of a crime of violence. Because Roblero-Ramirez's 2006 Nebraska conviction for

manslaughter was not a conviction for a crime of violence within the meaning of the applicable Guideline, we reverse and remand for resentencing.

## I.    BACKGROUND
### A.    Factual Background

On May 25, 2011, Fayetteville, Arkansas, Police Department officers (Fayetteville officers), encountered Roblero-Ramirez, a Guatemalan citizen, while investigating a domestic disturbance. United States Immigration and Customs Enforcement (ICE) officers alerted the Fayetteville officers that Roblero-Ramirez was suspected of immigration violations. The Fayetteville officers arrested Roblero-Ramirez on a state charge for obstructing governmental operations, and released him into ICE custody on May 26, 2011.

Roblero-Ramirez told the ICE officers he had illegally reentered the United States in February 2010, after having been deported. The ICE officers reviewed Roblero-Ramirez's alien registration file, which indicated Roblero-Ramirez was removed from this country on May 3, 1996; July 21, 2000; and January 3, 2008. The file also revealed that in March 2006, Roblero-Ramirez was sentenced after pleading guilty in Nebraska state court to manslaughter, in violation of Nebraska Revised Statute § 28-305.

### B.    Procedural History

Roblero-Ramirez pled guilty to illegal reentry into the United States after being deported for an aggravated felony conviction (manslaughter), in violation of 8 U.S.C. § 1326(a) and (b)(2). The district court conducted a thorough survey of the fifty states' and the federal manslaughter laws. The district court then focused on Nebraska Revised Statute § 28-305 where it described "the offense of killing another person without malice upon a sudden quarrel." The district court concluded under its analysis "that [the § 28-305] definition squarely comports with the generic definition of manslaugter as it's adopted in a majority of the states." Over Roblero-Ramirez's

objection, the district court at sentencing increased Roblero-Ramirez's base offense level by sixteen levels, reasoning Roblero-Ramirez's 2006 Nebraska manslaughter conviction constituted a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii). With this increase, the district court calculated an advisory Guidelines range of 46 to 57 months (level 21, category III). The district court sentenced Roblero-Ramirez to 46 months imprisonment.

The assistant federal public defender (FPD) representing Roblero-Ramirez on appeal filed a brief pursuant to Anders v. California, 386 U.S. 738, 744 (1967), asking this court "to determine whether there exist[] any non-frivolous issues for appeal" and moved to withdraw from representing Roblero-Ramirez. We denied the FPD's motion to withdraw, stating "a nonfrivolous issue exists as to whether the crime of manslaughter under the relevant Nebraska statute, as defined by the Nebraska courts at the time of Roblero-Ramirez's conviction, comported with the generic, contemporary definition of manslaughter." The FPD filed a merits brief consistent with our order, requesting oral argument "only if the Court deems it necessary to assist in its decisional process." On March 8, 2013, we scheduled this case for oral argument. On March 18, the FPD moved to waive oral argument. We granted this motion and accepted the case on the briefs, without oral argument.

## II. DISCUSSION

### A. Standard of Review and Applicable Law

Roblero-Ramirez argues the district court erred in imposing the sixteen level sentence enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because Roblero-Ramirez's Nebraska manslaughter conviction was not a "crime of violence" as the term is used in the Guideline. We review this question of law de novo. See United States v. Medina-Valencia, 538 F.3d 831, 833 (8th Cir. 2008). Under § 2L1.2(b)(1)(A)(ii), "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence," the sentencing court should increase the defendant's base offense level by

sixteen levels. The commentary on this provision explains the phrase "crime of violence" includes a manslaughter conviction "under federal, state, or local law." Id. cmt. n.1(B)(iii).[1]

### B.     Categorical Approach

We determine whether a prior conviction constitutes manslaughter under this Guideline using a categorical approach. See Medina-Valencia, 538 F.3d at 833. "Under this approach, we look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding" crime of violence. Moncrieffe v. Holder, 596 U.S. ___, ___, 133 S. Ct. 1678, 1684 (2013) (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 186 (2007)). By "generic" federal definition of a crime of violence, we mean the "sense in which the term is now used in the criminal codes of most States." Taylor v. United States, 495 U.S. 575, 598 (1990).

The categorical approach ensures the defendant's prior conviction "necessarily involved facts equating to the generic federal offense." Moncrieffe, 569 U.S. at ___, 133 St. Ct. at 1684 (quoting Shepard v. United States, 544 U.S. 13, 24 (2005)) (alterations and quotation marks omitted). We only consider the statutory elements of the prior offense, not the underlying conduct, so "we must presume that the conviction 'rested upon nothing more than the least of the acts'" proscribed by the state law "and then determine whether even those acts are encompassed by the generic federal offense." Id. at 1684-85 (quoting Johnson v. United States, 559 U.S. 133, 137

---

[1]The comment also defines "crime of violence" to include "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." The government has not proposed Roblero-Ramirez's crime of conviction qualifies as a crime of violence under this catch-all provision, so we do not consider that issue. See United States v. Greene, 513 F.3d 904, 906-07 (8th Cir. 2008) (deciding the government waived an argument it did not raise at sentencing or in its opening appellate brief).

(2010)) (alteration omitted). "Whether the noncitizen's actual conduct" was sufficient to satisfy this generic federal definition "'is quite irrelevant.'" Id. at 1684 (quoting United States ex rel. Guarino v. Uhl, 107 F.2d 399, 400 (2d Cir. 1939) (L. Hand, J.)). Thus, the categorical approach "asks what offense the noncitizen was 'convicted' of, not what acts he committed." Id. at 1685 (internal citation omitted).

When a state statute of conviction is overinclusive, meaning the statute proscribes conduct that is consistent with the generic federal offense as well as conduct that is not, we apply the modified categorical approach to determine which of several, separately described crimes encompassed by the statute formed the basis of the defendant's conviction. See id. at 1684-85; Medina-Valencia, 538 F.3d at 833. Even under this modified approach, we do not consider what the defendant's actual conduct might have been. See id. We look only "to the charging documents, plea agreement, jury instructions, or comparable judicial records to determine whether the prior offense qualifies" as a crime of violence. Id.

This categorical approach "serves [the] 'practical' purpose[ of] promot[ing] judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." Id. at ___, 133 S. Ct. at 1690 (quoting Chambers v. United States, 555 U.S. 122, 125 (2009)). This approach also avoids "'potential unfairness'" to defendants who might have difficulty establishing in a subsequent federal action the factual circumstances upon which the prior state conviction was based. Id. (quoting Taylor, 495 U.S. at 601). Even so, the categorical approach "is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" Id. at ___, 133 S. Ct. at 1684-85 (quoting Duenas-Alvarez, 549 U.S. at 193).

## C.   Crime of Violence

Nebraska Revised Statute § 28-305 provides "[a] person commits manslaughter if he kills another without malice, either upon a sudden quarrel, or causes the death of another unintentionally while in the commission of an unlawful act."  This statute proscribes two separate offenses: "sudden quarrel" manslaughter and "unlawful act" manslaughter.  See State v. Pettit, 445 N.W.2d 890, 896 (Neb. 1989).  The parties agree Roblero-Ramirez was convicted under the sudden quarrel provision.  Under the categorical approach, we must decide whether Nebraska's sudden quarrel prohibition fits within the definition of generic federal manslaughter.  See Medina-Valencia, 538 F.3d at 833.

Roblero-Ramirez contends generic federal manslaughter requires intentional or reckless conduct, whereas the Nebraska statute criminalizes involuntary killing, i.e., unintentional conduct.  The government agrees generic federal manslaughter requires, at least, a mens rea of recklessness.  Our court has not considered the mens rea requirement for the generic federal manslaughter definition, but a number of our sister circuits have.  All courts to address the issue agree with Roblero-Ramirez that generic manslaughter requires a mens rea of recklessness, at least.  See United States v. Armijo, 651 F.3d 1226, 1236 (10th Cir. 2011) (deciding generic manslaughter requires "purposeful or intentional behavior"); United States v. Hernandez-Rojas, 426 F. App'x 67, 70 (3d Cir. 2011) (stating "'generic, contemporary manslaughter . . . requires a recklessness *mens rea*'" (quoting United States v. Dominguez-Ochoa, 386 F.3d 639, 646 (5th Cir. 2004))); United States v. Peterson, 629 F.3d 432, 436-37 (4th Cir. 2011) (deciding the mens rea required for generic federal manslaughter is "reckless" or "intentional" conduct); see also United States v. Gomez-Leon, 545 F.3d 777, 791, 795 (9th Cir. 2008) (noting "the modern view appears to be that recklessness is an element of contemporary manslaughter" and "the notion of manslaughter is reserved for conduct that includes a more culpable mental state than mere negligence").  We need not decide at this time whether generic manslaughter requires "purposeful or intentional behavior," Armijo, 651 F.3d at 1236, or mere

-6-

"recklessness," Dominguez-Ochoa, 386 F.3d at 646, because under either standard, the Nebraska manslaughter offense of which Roblero-Ramirez was convicted is broader than its generic federal counterpart.

Until 1994, the Nebraska courts interpreted the sudden quarrel manslaughter component of § 28-305 to prohibit the intentional killing of another, upon a sudden quarrel. See State v. Jones, 515 N.W.2d 654, 658 (Neb. 1994) (citing Pettit, 445 N.W.2d at 905). In 1994, the Nebraska Supreme Court in Jones departed from this formulation. See id. at 658-59. Reasoning "'the words "voluntary" and "involuntary" have not been a part of Nebraska's manslaughter statute since 1873,'" id. at 658 (quoting Pettit, 445 N.W.2d at 912 (Fahrnbruch, J., dissenting)), the Jones court determined "there is no requirement of an intention to kill in committing manslaughter. The distinction between second degree murder and manslaughter upon a sudden quarrel is the presence or absence of an intention to kill," id. at 659. No Nebraska case thereafter required a reckless mens rea under the Jones interpretation. Cf. State v. Woods, 542 N.W.2d 410, 416 (Neb. 1996) (following Jones, and instructing the district court on remand "to remove the word 'intent' from the manslaughter instruction"). Under the categorical approach, we cannot conclude Roblero-Ramirez's Nebraska manslaughter conviction, as interpreted by the Nebraska Supreme Court at the time, equates to the generic federal crime of manslaughter.

We recognize the Nebraska Supreme Court later overruled Jones, and reinstated Pettit, in State v. Smith, 806 N.W.2d 383, 394 (Neb. 2011) (holding "an intentional killing committed without malice upon a 'sudden quarrel,' as that term is defined by our jurisprudence, constitutes the offense of manslaughter"). Although a Nebraska manslaughter conviction under the Smith-Pettit interpretation probably meets the mens rea requirement for generic federal manslaughter, see Armijo, 651 F.3d at 1236, the Smith-Pettit interpretation was not Nebraska law when Roblero-Ramirez was convicted in 2006.

We also recognize the district court was not made aware, during its thorough sentencing analysis, of the Nebraska Supreme Court's unusual interpretation in 2006 of manslaughter under § 28-305. Roblero-Ramirez's federal public defender advised the district court that no precedent allowed the court to "look at case law such as the . . . Nebraska v. Smith case." However, the Nebraska manslaughter law for sudden quarrel in 2006 was overinclusive.

The district court's imposition of a sixteen level criminal history category enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) was a "'non-harmless error,'" United States v. Tomac, 567 F.3d 383, 386 (8th Cir. 2009) (quoting United States v. Spikes, 543 F.3d 1021, 1023 (8th Cir. 2008)) (alteration omitted). Roblero-Ramirez is entitled to a new sentencing. See United States v. Barrientos, 670 F.3d 870, 873 (8th Cir. 2012) (remanding for resentencing because the district court incorrectly calculated the defendant's criminal history points under the Guidelines).

## III.    CONCLUSION

We reverse and remand for resentencing, consistent with the Nebraska Supreme Court's manslaughter precedent at the time of Roblero-Ramirez's 2006 conviction and with our opinion today. On remand, the district court may apply further the modified categorical approach as may be appropriate.

_____