# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3412

_____

United States of America

*Plaintiff - Appellee*

v.

Derek Edward Benedict

*Defendant - Appellant*

_____

No. 15-1014

_____

United States of America

*Plaintiff - Appellee*

v.

Lyle Robert Carpenter

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: March 29, 2017
Filed: May 1, 2017
_____

Before MURPHY, COLLOTON, and BENTON, Circuit Judges.
_____

MURPHY, Circuit Judge.

Appellants Derek Benedict and Lyle Carpenter were convicted by a jury of conspiracy and burglarizing various drug stores in Minnesota and Iowa where they stole pharmaceutical products and cash from safes, registers, and ATMs. They now appeal their convictions and their sentences imposed by the district court.[1] We affirm.

## I.
### A.

From 2009 to 2012, Derek Benedict and Lyle Carpenter were involved in a series of commercial burglaries, conspiring at various times with six other people: Jason Mussehl, Julia Julien, Tim Kielb, Cher Mayotte, Jennifer Stanley, and Jonathan Quast. Jason Mussehl was involved in burglaries for over 25 years, which were his primary source of income. He knew Benedict from elementary school and met Carpenter in 2009. Mussehl's half brother was Jonathan Quast, and Mussehl dated both Julia Julien and Jennifer Stanley. Additional members of the conspiracy were Tim Kielb and his girlfriend, Cher Mayotte.

The group's burglaries focused on the theft of money and pharmaceuticals from businesses they investigated as potential targets, where they would first look for motion sensors and locate any alarm systems. They would then return at night to break into a

_____

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

targeted building, often cutting a hole in the roof near an alarm which they proceeded to disarm. At other times they entered a building by knocking down an exterior wall or by prying open the front door and disabling any alarm before a signal could be sent. Once an alarm was disabled, the burglars would leave the location for a half hour or more to ensure that they had not been detected. One of the group was tasked with waiting outside in the vicinity of a targeted business to watch for any law enforcement personnel. After being satisfied that they had not been detected, the burglars would reenter the store, drill open safes and ATMs, and carry away their contents. The burglars working inside a store would communicate by two way radio with their confederate remaining outside. Carpenter specialized in drilling into safes and ATM machines, a task at which he excelled. Benedict served as driver and kept watch outside for any approaching police.

On October 4, 2009, Carpenter, Mussehl, Tim Kielb and Jennifer Stanley burglarized a Walgreens drug store in Minneapolis and transported its ATM to the house of a friend. After breaking into the machine and obtaining its contents, the burglars disposed of the machine in the Mississippi River. Later that month, Benedict, Carpenter, Mussehl, and Stanley burglarized a Walgreens store in Robbinsdale, Minnesota. Then the same four burglars broke into a Golden Valley Walgreens in November and a South Minneapolis Walgreens in December.

Carpenter went to prison after he was convicted of a different crime, but Mussehl continued to burglarize Walgreens stores. Benedict wanted to participate in these burglaries, but Mussehl turned him down. When Carpenter was released from prison in 2012, he again joined in burglaries with Benedict and Mussehl. On July 15, 2012, Benedict and Carpenter, together with Mussehl, Kielb, Cher Mayotte, and Julia Julien, burglarized a pharmacy in Bloomington, Minnesota (Bloomington Drug). The burglars took both money and pharmaceuticals. Carpenter, Mussehl, Kielb, and Mayotte next committed a burglary at a gas station in Prior Lake, Minnesota on August 19, 2012. They removed an ATM belonging to South Metro Federal Credit Union and transported it in Mussehl's truck to a friend's garage, where they broke into it. Four days later,

Carpenter, Mussehl, Kielb and Quast burglarized a Walgreens store in Circle Pines, Minnesota.

On September 9, 2012, Benedict, Carpenter, Mussehl and Julien burglarized a Walgreens store in Des Moines, Iowa. Benedict again kept watch outside the store, and Carpenter and Mussehl entered the building. Later that day, Benedict bought an Infiniti using his share of the proceeds from the burglary.

By early 2013, coconspirator Tim Kielb had been arrested and began to cooperate with law enforcement agents. He used a recording device to capture several discussions with Benedict and Carpenter about burglaries. In February of that year, police found a glove at the site of an Aldi Foods store in Blaine, Minnesota, which had been burglarized by entering through the roof. A DNA swab of the Aldi glove linked to a predominate profile that matched to Lyle Carpenter. On June 9, 2013, Carpenter was arrested while burglarizing a Super America gas station. He was apprehended along with a crowbar, sledgehammer, mask and two way radio.

B.

Benedict and Carpenter were jointly charged with conspiracy to commit bank burglary, bank larceny, and interstate transportation of stolen property, conspiracy to steal controlled substances, bank larceny, burglary involving controlled substances, and interstate transportation of stolen property. The ten count indictment also charged Carpenter on additional substantive charges of bank burglary, bank larceny, credit union burglary, and burglary involving controlled substances. Benedict and Carpenter were the only two defendants to proceed to trial; each of the other coconspirators pled guilty. In addition to testimony from numerous law enforcement officials and others, the government called coconspirators Mussehl, Julien, Kielb, Stanley, and Mayotte to testify and describe their own roles in the conspiracy, as well those of Benedict and Carpenter. Coconspirator Jonathan Quast was additionally called to testify about the burglary he committed with Carpenter in Circle Pines, Minnesota.

Benedict moved to sever, but severance was denied. He also sought to have an expert witness testify to the subject of the untrustworthiness of coconspirator testimony, but his request was untimely and rejected by the district court. Both men were convicted of all charged crimes. At sentencing the district court concluded that both Benedict and Carpenter were career offenders. They were sentenced accordingly: Carpenter to 210 months with $272,561 ordered in restitution, and Benedict to 150 months with $199,007 ordered in restitution. The two defendants now appeal their convictions and sentences.

## II.

Benedict makes three claims relevant only to his case: that he was improperly denied a severance, that he should have been permitted to present expert testimony, and that the evidence was insufficient to convict him of the charged offenses.

Benedict moved for a severance. Federal law favors joint trial for individuals charged in the same indictment, and there is a "strong" presumption against severing properly joined cases. United States v. Delpit, 94 F.3d 1134, 1143 (8th Cir. 1996). A denial of a motion to sever is only reversed when a defendant has shown an abuse of discretion resulting in severe prejudice. United States v. Young, 701 F.3d 1235, 1238 (8th Cir. 2012). To prevail on such a claim a defendant must show prejudice to a specific trial right or that a joint trial would not enable the jury to make "a reliable judgment about guilt or innocence." United States v. Dierling, 131 F.3d 722, 734 (8th Cir. 1997) (internal quotation marks omitted). Varying strength in the evidence against each defendant does not require a severance. Id.

Benedict and Carpenter were indicted together for their participation in the same conspiracy, and their cases were properly joined. See Delpit, 94 F.3d at 1143. Benedict argues however that some of the evidence focused solely on Carpenter, including a video of Carpenter being arrested while burglarizing a Super America store and evidence about a glove matching Carpenter's DNA profile which had been found outside a burglarized

Aldi Foods store. This evidence is not sufficient to show that the jury could not have made a reliable judgment about Benedict's guilt or innocence because of the district court's limiting jury instructions that each defendant "is entitled to have his case decided solely on the evidence which applies to him," and that the jury "must give separate consideration to the evidence about each individual Defendant." This trial was not the "unusual case" in which the efficiency of joinder would have been outweighed by difficulty for the jury to analyze separately the evidence against each individual defendant. See United States v. Martin, 777 F.3d 984, 995 (8th Cir. 2015).

Benedict next claims that the district court erred by rejecting his request to permit expert testimony from Dr. Jeffrey Neuschatz. While Benedict contends this amounted to the denial of his right to defend himself and therefore is subject to de novo review, a court's exclusion of expert testimony is appropriately reviewed for abuse of discretion. United States v. Martin, 391 F.3d 949, 954 (8th Cir. 2004). The district court's decision was based on Benedict's failure to make disclosures required under Federal Rule of Criminal Procedure 16(b)(1)(C). That rule requires a defendant, upon the government's request, to provide a summary of proposed testimony describing "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C). Five days before trial was to begin, Benedict first indicated his intention to call Dr. Neuschatz. The district court permitted the disclosures to be made at that time, but they were not. Then on December 11, the court prohibited its introduction under Rule 16(d)(2)(C), and Benedict offers no argument on appeal about the disclosure issue. We conclude the district court did not abuse its discretion by excluding evidence for that reason. See United States v. Holmes, 670 F.3d 586, 599 (4th Cir. 2012) (concluding district court did not abuse its discretion in excluding expert testimony after required Rule 16(b)(1)(C) disclosures were not made).

The district court also concluded that the subject of the proffered expert testimony was improper. Dr. Neuschatz, the proffered expert, had authored an article entitled The Effects of Accomplice Witnesses and Jailhouse Informants on Jury Decision Making, 32 Law & Hum. Behav. 137 (2008). His article warned that mock jurors provide "undue

weight to confession evidence when rendering guilt decisions." Id. at 138. In his affidavit filed in the district court, Dr. Neuschatz claimed that "[w]ithout expert assistance, jurors' abilities to assess the veracity of a witness's testimony are extremely limited." Benedict argues on appeal that the testimony would have been proper and necessary to demonstrate the unconscious impact of live testimony and "the substantial bias of testimonial evidence from any source on a listener." It is however "plain error to admit testimony that is a thinly veiled comment on a witness' credibility." Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 884 (8th Cir. 1998). Moreover, "[w]eighing evidence and determining credibility are tasks exclusive to the jury." Id. at 883. The district court did not abuse its discretion by declining to admit Dr. Neuschatz's testimony.

Benedict also challenges the sufficiency of the evidence. He argues that there was not corroborated evidence to show he acted with a purpose in common with the other members of the conspiracy. We review such a challenge de novo, examining the evidence in the light most favorable to the government, resolving evidentiary conflicts in the government's favor, and granting all reasonable inferences which support the verdict. United States v. Casteel, 717 F.3d 635, 644 (8th Cir. 2013). Benedict's coconspirators testified that he had participated in a conspiracy to commit burglary and the other charged offenses. The testimony of coconspirators alone is sufficient to support a conviction for conspiracy unless it is "incredible or insubstantial on its face." United States v. Thompson, 533 F.3d 964, 970 (8th Cir. 2008) (internal quotation marks omitted). The coconspirator testimony introduced in this case was credible and supported by other evidence. Contrary to Benedict's complaint that there was not sufficient corroborating evidence, much of the coconspirator testimony was corroborated. Jason Mussehl for example testified that Benedict told him that he purchased an Infiniti with the proceeds of their burglary of a Walgreens store in Des Moines. The government then introduced the title to the particular car.

Benedict also relies upon Mussehl's testimony that for a period of time Benedict unsuccessfully sought to participate in burglaries with Mussehl. Benedict claims this shows he was not part of a single conspiracy. Mussel's full testimony, however, shows

that Benedict engaged in numerous burglaries with the group of coconspirators. Benedict's claim that the evidence does not show his participation in a conspiracy is flatly contradicted by the trial record. We conclude that the evidence was sufficient to sustain his convictions.

III.

Carpenter makes one claim relevant only to his case, arguing that restitution was wrongly imposed under the Mandatory Victim Restitution Act (MVRA). We review such questions of law de novo. United States v. Senty-Haugen, 449 F.3d 862, 865 (8th Cir. 2006). Carpenter maintains that corporations are not victims under the Mandatory Victims Restitution Act because they are not "persons" within the meaning of the statute. The MVRA requires that a district court shall order a defendant to make restitution in cases "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). "Victim" is defined in the statute to mean "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." Id. § 3663A(a)(2).

Although "person" is not defined in the MVRA, the Dictionary Act defines "person" to include corporations "unless the context indicates otherwise." 1 U.S.C. § 1. Carpenter does not dispute that the corporations here were harmed as a result of his conduct, but claims that the context here shows corporations do not fit within the statutory definition of person since "it would have been easy" to provide in the text of the MVRA that "'persons' includes corporations." This argument overlooks the statutory scheme and the Dictionary Act itself. See 1 U.S.C. § 1.

The government adds that the context within the MVRA itself indicates that corporations are eligible to be considered victims within the meaning of the act. Section 3663A(c)(1)(A)(ii) extends the MVRA to crimes such as bank fraud under 18 U.S.C. § 1344, which covers defrauding "a financial institution." Id. § 1344(1). Such an inclusion would make no sense if the MVRA were intended to exclude corporations from

its definition of victim. Carpenter's limited definition is inconsistent with our prior MVRA decisions which have not applied the statute only to natural persons. See Senty-Haugen, 449 F.3d at 865 (concluding that "the IRS is an eligible victim under the MVRA"); see also United States v. Engelmann, 720 F.3d 1005, 1014 (8th Cir. 2013) (rejecting the argument that bad actions by financial institutions made them ineligible for victim status under the MVRA).

Carpenter claims that the district court erred in ordering $53,729 in restitution to the targeted stores for sums of money taken from safes and cash registers during the burglaries, as opposed to money taken from ATMs. He claims these sums represent money taken during the commission of state law crimes for which restitution is not appropriate. We look to the "scope of the indictment to determine whether an award" is eligible to be included in a restitution order. United States v. Ramirez, 196 F.3d 895, 900 (8th Cir. 1999) (internal quotation marks omitted). A district court also has "discretion to order restitution for all the victims" of a criminal scheme, whether or not the particular losses are "specifically named in the indictment." Id. at 899. Carpenter's argument rests in part on his claim that "no [f]ederally-charged conspiracy existed here to steal the store's own property and money," an assertion which is contradicted by the record. Carpenter was indicted and convicted of Interstate Transportation of Stolen Property, 18 U.S.C. § 2314, which requires transportation of money worth $5,000 or more, knowing it to have been stolen, and conspiracy to commit the same. Moreover, the indictment in this case specifically charged the taking of money from Walgreens safes and transporting it from Iowa to Minnesota.

Even if the conspiracy charged in the indictment had not included the stolen property charge, the restitution order for payments to the burglarized stores was proper under the plain language of the MVRA. That act requires that restitution be made to every victim. 18 U.S.C. § 3663A(a)(2). A victim is defined as:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an

offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

Id. The stores were clearly victims, because they were harmed as "a result of the commission of an offense for which restitution may be ordered," id., namely, conspiracy to commit bank burglary, bank larceny, and interstate transportation of stolen property, as well as conspiracy to steal controlled substances. The taking of money from the safes was also specific "criminal conduct" which Carpenter and his coconspirators undertook "in the course of the scheme, conspiracy, or pattern." Id. We conclude that the district court did not err in its imposition of restitution for the victim stores.

IV.

A.

Both defendants challenge an evidentiary stipulation which established jurisdictional elements of the charged offenses, including the stipulation that certain Walgreens stores which had been burglarized were used in part as a bank, that certain ATMs were owned by a bank insured by the FDIC or by a credit union insured by the National Credit Union Administration, that Bloomington Drug was registered with the FDA, and that the stolen drugs contained FDA controlled substances. Benedict and Carpenter now claim they did not knowingly and voluntarily agree to the admission of their stipulation. Our review is for plain error because the defendants did not object to the stipulation before the district court. Martin, 777 F.3d at 993.

We recently rejected a very similar argument in Martin. There, as here, the defendants did not object to an evidentiary stipulation in district court, yet claimed on appeal that it had not been knowingly made. 777 F.3d at 993. We noted there that a defendant is ordinarily bound by an agreed upon stipulation "[u]nless the defendant indicates objection at the time the stipulation is made." Id. (internal quotation marks

-10-

omitted). <u>Martin</u> also reaffirmed our circuit rules that 1) an inquiry as thorough as that provided for in Federal Rule of Criminal Procedure 11 is not required when stipulating to an element of an offense, and 2) a stipulation is knowingly and voluntarily made when signed by the defendant and "entered in open court in the presence of the defendant." <u>Id.</u> (internal quotation marks omitted).

Appellants now emphasize what they see as the sole difference between <u>Martin</u> and their case: in <u>Martin</u> the stipulation was signed by the defendant, while here the stipulation was signed only by defense counsel. This argument fails. The stipulation was read verbatim in open court in the presence of appellants and defense counsel represented that they did not object to its admission. Appellants are bound by their stipulation, and it was not plain error for the district court to accept it. <u>See</u> 777 F.3d at 993.

B.

At sentencing both Benedict and Carpenter received enhancements under the sentencing guidelines for being career offenders as defined in U.S.S.G. § 4B1.1 (2014).[2] A defendant is a career offender under U.S.S.G. § 4B1.1(a) (2014) if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

---

[2] Since Benedict was sentenced in October 2014 and Carpenter was sentenced in December 2014, we look to the 2014 version of the guidelines. <u>See</u> <u>United States v. Lawin</u>, 779 F.3d 780, 781 (8th Cir. 2015) (per curiam).

A "crime of violence" includes any offense punishable by imprisonment for more than one year that "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2) (2014). The "or otherwise" clause is referred to as the residual clause. See United States v. Jordan, 812 F.3d 1183, 1185 (8th Cir. 2016). A career offender's offense level is determined in part by referencing the statutory maximum penalty of the crime of violence conviction in the instant case. U.S.S.G. § 4B1.1(b) (2014).

Before turning to defendants' arguments, we note that in 2015 the Supreme Court held that the residual clause in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. Johnson v. United States, 135 S. Ct. 2551 (2015). The residual clause in that statute is identical to the residual clause in U.S.S.G. § 4B1.2(a)(2) (2014). Nevertheless, the Court recently held that the residual clause in the guidelines is not unconstitutionally vague because the guidelines are not subject to vagueness challenges. Beckles v. United States, 137 S. Ct. 886 (2017). Although the Sentencing Commission removed the residual clause from U.S.S.G. § 4B1.2(a)(2) in 2016, see U.S.S.G. app. C, amend. 798, we apply it here because both of these defendants were sentenced in 2014. See Lawin, 779 F.3d at 781.

Carpenter argues that he is not a career offender because none of his "instant offense[s] of conviction" qualify as crimes of violence. The relevant elements of Carpenter's conviction for burglary involving controlled substances are "without authority, enter[ing] or attempt[ing] to enter, or remain[ing] in, the business premises or property of a person . . . with the intent to steal." 18 U.S.C. § 2118(b). These elements closely track those of generic burglary, which are "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 599 (1990). We have concluded "that any generic burglary is a crime of violence under the 'otherwise involves' residual

provision in U.S.S.G. § 4B1.2(a)(2)." United States v. Stymiest, 581 F.3d 759, 768 (8th Cir. 2009). We need not decide the question of whether burglary involving controlled substances qualifies as a generic burglary in this case because Carpenter's "offense was clearly a 'crime of violence' under the" residual clause itself. See United States v. Cantrell, 530 F.3d 684, 695 (8th Cir. 2008).

To determine whether an offense qualifies as a crime of violence under the residual clause, we use the "categorical approach," which requires us to "consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." James v. United States, 550 U.S. 192, 202 (2007), overruled by Johnson, 135 S. Ct. at 2563.[3] A prior conviction qualifies as a crime of violence under the residual clause if it "(1) 'present[s] a serious potential risk of physical injury to another,' and (2) [is] 'roughly similar, in kind as well as degree of risk posed,' to the offenses listed in § 4B1.2(a)(2)." United States v. Watson, 650 F.3d 1084, 1092 (8th Cir. 2011) (quoting United States v. Boyce, 633 F.3d 708, 711 (8th Cir. 2011)).

We first analyze whether the risk posed by burglary involving controlled substances is "roughly similar, in kind as well as degree of risk posed," by its closest enumerated offense analog—here, burglary. See Watson, 650 F.3d at 1092 (quoting Boyce, 633 F.3d at 711). The main risk posed by burglary arises "from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." Cantrell, 530 F.3d at 695 (quoting James, 550 U.S. at 203). That risk applies equally here because to be convicted of burglary involving controlled substances, a person must enter "the

---

[3]Although James analyzes the ACCA, not the guidelines, "[t]he definition of 'crime of violence' in U.S.S.G. § 4B1.2(a) is nearly identical to the definition of 'violent felony' in 18 U.S.C. § 924(e)(2)(B)," and we see no reason to treat them differently here. United States v. Craig, 630 F.3d 717, 723 (8th Cir. 2011) (alteration in original) (quoting United States v. Clinkscale, 559 F.3d 815, 817 (8th Cir. 2009)).

business premises or property of a person . . . with the intent to steal." <u>See</u> 18 U.S.C. § 2118(b).

Having determined that the risk of burglary involving controlled substances is "roughly similar, in kind as well as degree of risk posed," to generic burglary, we next analyze whether it "present[s] a serious potential risk of physical injury to another." <u>See</u> <u>Watson</u>, 650 F.3d at 1092 (quoting <u>Boyce</u>, 633 F.3d at 711). We conclude that the answer to that question is affirmative because any violation of the statute creates a risk of a violent confrontation between the burglar "and the occupant, the police, or another third party." <u>See</u> <u>Cantrell</u>, 530 F.3d at 696. We thus affirm Carpenter's classification as a career offender because his conviction for burglary involving controlled substances qualifies as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2) (2014).

Benedict argues that he is not a career offender because his two prior convictions for third degree burglary, Minn. Stat. § 609.582, subd. 3 (1995), and for aiding and abetting third degree burglary, <u>id.</u> (2004), are not crimes of violence. A person commits third degree burglary in Minnesota if he "enters a building without consent and with intent to steal or commit any felony or gross misdemeanor while in the building, or enters a building without consent and steals or commits a felony or gross misdemeanor while in the building." Minn. Stat. § 609.582, subd. 3 (1995); <u>accord</u> <u>id.</u> (2004). We have concluded that Minnesota's third degree burglary statute is not a violent felony under the enumerated clause of the ACCA because its definition is broader than generic burglary. <u>United States v. McArthur</u>, 850 F.3d 925, 937–40 (8th Cir. 2017). Benedict's prior conviction for third degree burglary qualifies as a crime of violence under the residual clause of the guidelines, however, for the same reason that Carpenter's instant conviction qualifies. A person who commits third degree burglary creates a risk of a violent confrontation between himself "and the occupant, the police, or another third party." <u>See</u> <u>Cantrell</u>, 530 F.3d at 696. Benedict's conviction for aiding and abetting third degree burglary also qualifies as

a crime of violence under the residual clause because application note 1 to U.S.S.G. § 4B1.2 (2014) provides that "[f]or purposes of this guideline—'Crime of violence' . . . include[s] the offense[] of aiding and abetting." We thus affirm Benedict's classification as a career offender because his prior convictions for third degree burglary qualify as crimes of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2) (2014).

V.

The district court did not err by holding a joint trial for these coconspirators, accepting an evidentiary stipulation, or excluding expert witness testimony. Nor did the trial court err by requiring restitution. The evidence was also more than sufficient to convict Benedict. Because appellants' burglary convictions qualify as crimes of violence under the residual clause of the guidelines, we affirm their career offender status and sentences. The judgments of the district court are affirmed.

_____