GRUENDER, Circuit Judge,
dissenting.
I agree that the district court erred in concluding that McMillan’s conviction of third degree riot for the benefit of a gang qualifies as a crime of violence under the force clause of United States Sentencing Guidelines § 4B1.2(a)(l), and accordingly, I join sections I through III of the court’s opinion. However, I respectfully dissent from the court’s decision to vacate and remand for resentencing. Instead, I would follow our approach in United States v. Benedict and affirm on the alternative basis that McMillan’s riot conviction qualifies as a crime of violence under the residual clause. See 855 F.3d 880, 890 (8th Cir. 2017) (affirming career-offender enhancements under § 4B1.2(a)’s residual clause after en banc court vacated original panel opinion based on the enumerated-offenses clause); see also United States v. Snyder, 852 F.3d 972, 973 (10th Cir. 2017) (affirming application of career-offender enhancement based on the enumerated-offenses clause on the alternative basis of the residual clause).
In June 2009, McMillan and six of his cohorts from the East Side Boyz street gang squared off against members of the rival Selby Side gang in the parking lot of a local gas station. Shortly thereafter, McMillan and his crew crossed into 'Selby Side territory, located a member of the gang, and fatally shot him in the head. McMillan pleaded guilty to third degree riot for the benefit of a gang for his role in the murder. See Minn. Stat. §§ 609.71(3), 609.229(3)(c). Several years later, police officers in Minneapolis, Minnesota conducted a routine traffic stop of a vehicle that McMillan was driving. During the stop, the officers detected an odor of marijuana, searched the car, and found a Glock 19 handgun with a laser sight hidden in the driver’s seat, cushion. Police subsequently learned that the gun had been stolen. Based on his prior convictions for third degree riot and two other felonies involving controlled substances, a federal grand jury indicted McMillan on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). McMillan appeals his resulting sentencing, challenging only the district court’s determination that his' third degree riot conviction qualified as a crime of violence under U.S.S.G. § 4B1.2(a).
As the court notes, we review de novo whether a conviction qualifies as a crime of violence. United States v. Rice, 813 F.3d 704, 705 (8th Cir. 2016) (citation omitted). “It is, however, well established that we may affirm a sentence on any grounds supported by the record.... ” United States v. Goings, 200 F.3d 539, 544 (8th Cir. 2000) (citation omitted). Given that, upon remand, the district court will be compelled to “follow the firmly-established principle [of] apply[ing] the Sentencing Guidelines in effect at the time of sentencing,” United States v. Lawin, 779 F.3d 780, 781 (8th Cir. 2015) (per curiam) (citation omitted); see also 18 U.S.C. § 3742(g) (“A district court to which a case is remanded ... shall apply the guidelines ... that were in effect on the date of the previous sentencing of the defendant prior to the appeal, together with any amendments *1060 thereto by any act of Congress that was in effect on such date;.. .”)> and because the determination of whether a conviction constitutes a crime- of violence is a question of law. under the categorical approach, I would resolve whether McMillan’s riot conviction nonetheless qualifies as a crime of violence ■ under the guidelines’ residual clause rather than remanding.
As we explained in Benedict, “To determine whether ah offense qualifies as a crime of violence under the residual clause, we use the ‘categorical approach,’ which requires us to consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.” 855 F.3d at 889 (quotation omitted). Applying this framework, I would decide whether McMillan’s riot conviction: “(1) presents] a serious potential risk of physical injury to another, and (2) [is]- roughly similar, in kind as well as degree of risk posed, to the offenses listed in § 4B1.2(a)(2).” United States v. Watson, 650 F.3d 1084, 1092 (8th Cir. 2011) (citation and internal quotation marks omitted). “[A] crime involves the requisite risk when the risk posed by the crime in question is comparable to that posed by its closest analog among the enumerated offenses.” Id. (citation omitted).
■. In Minnesota, third degree/ riot • is a gross misdemeanor committed -“[w]hen three or more persons assembled disturb the public peace by an intentional act or threat of unlawful force or violence to person or property.” Minn. Stat.- § 609.71(3). However, Minnesota elevates this offense to- a felony punishable by up to three years’ imprisonment when it is committed for the benefit of a gang, which, in turn, requires the State to prove both that the crime benefitted a gang and that the gang is involved in sufficiently deviant behavior to qualify as a “criminal gang.” Id. § 609.229. I believe that the Minnesota offense of third degree riot for the benefit of a gang presents a serious potential risk of physical injury to another and that such a risk is similar, in kind as well as degree of risk posed, to the offenses enumerated in § 4331.2(a)(2). See Watson, 650 F.3d at 1092.
As to. the first part of the test, we explained iii United States v. Craig that even if “the crime itself may be accomplished without violent physical force, the offense may nevertheless be a crime of violence under the residual clause if it creates a substantial risk of a violent confrontation and [typically] involves purposeful, violent, and aggressive behavior.” 630 F.3d 717, 724 (8th Cir. 2011) (quotation omitted). Specifically, Craig held that Tennessee sexual battery was a crime of violence because the offense inherently “creates a substantial risk of a violent, face-to-face confrontation should. the victim, or another person ... become aware of what is happening.” See id. at 725. A similar risk of confrontation inheres when an assembled group of three or more gang members engages in an act or threat of unlawful force or-violence sufficient to disturb the public peace. For example, it is not difficult to imagine such force, even when directed at property rather than people, leading to violence between the gang and a local business owner, an innocent bystander, an overzealous recruit of the neighborhood watch, or, most likely, members of a rival gang. Likewise, given the offense’s dual requirements that the force itself must cause the disturbance of the peace and that it be employed for thé benefit of a gang, the offender’s behavior is by definition purposeful and aggressive. See id. As to the second part of the test, while third degree riot for the benefit of a gang will not .always result in a violent confrontation, there is little .question that the crime creates a risk of violence at least as sub *1061 stantial as the risk created by the enumerated offense of burglary. Accord United States v. Hennecke, 590 F.3d 619, 623 (8th Cir.2010) (holding that stealing from a person is a crime of violence under the residual clause, because it “poses the same risk of violent confrontation with the victim or a third person as attempted or completed burglary”); Watson, 650 F.3d at 1093 (finding same for possession of a firearm while committing a drug trafficking offense and noting that, although “[t]he enumerated crime of burglary can be accomplished without purposeful.violence ... it is a crime of violence because the offender purposefully and aggressively creates a substantial risk of violent confrontation.” (quotation omitted)); United States v. Hudson, 577 F.3d 883, 885-86 (8th Cir. 2009) (finding same for Missouri offense of resisting arrest by fleeing). On a. final note, while not dispositive, the fact that Minnesota classifies even ordinary riot as a crime of violence only serves to confirm that the offense qualifies under the definition set out in the guidelines. See Minn. Stat. § 624.712(5).
In his supplemental brief, McMillan resists the application of the residual clause for two main reasons. First, he contends that the Supreme Court’s decision in Beckles v. United States upholding the guidelines’ residual clause, — U.S. -, 137 S.Ct. 886, 890, 197 L.Ed.2d 145 (2017), does not undermine its prior opinion in Johnson v. United States, which struck down .the identically worded residual clause of the Armed Career Criminal Act (“ACCA”) as unconstitutionally vague, — U.S. -, 135 S.Ct. 2551, 2563, 192 L.Ed.2d 569 (2015). Specifically, he argues, “Just because a guideline cannot be unconstitutionally vague is no guarantee that courts can know what it means and interpret it in a principled and consistent fashion.” Accordingly, McMillan suggests that it would constitute “procedural error and an abuse of discretion to calculate the guideline range based on an attempt to interpret the residual clause;” This argument is unavailing, given that Beckles itself affirmed the dismissal of a postconviction motion to vacate a sentence based on the guidelines residual clause. 137 S.Ct. at 891. Moreover, in Benedict, we affirmed a crime-of-violence determination ‘ based on the residual clause, thereby foreclosing McMillan’s interpretation of Beckles,[3] See 855 F.3d at 888-90.
Alternatively, McMillan urges that, even if,the guidelines’ residual clause remains valid, his riot conviction does not qualify as a crime of violence under it. In advancing this position, McMillan offers- three hypothetical examples of nonviolent property crimes that, at most, would qualify as ordinary third degree riot, rather than the felony version of the offense committed for the benefit of a gang. These three hypo-theticals involve groups of individuals waking up neighbors by throwing rocks at store -windows, tagging businesses with graffiti, or keying cars. Even assuming that such conduct would satisfy the ele *1062 ments of a Minnesota riot conviction, however, these examples are insufficient to preclude the application of the residual clause. As we have previously cautioned, “the categorical approach is not an invitation to apply legal imagination to the state offense; there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to [hypothetical] conduct.... ” United States v. Roblero-Ramirez, 716 F.3d 1122, 1126 (8th Cir. 2013) (quotations and citations omitted). In this vein, the Government notes that McMillan’s hypotheticals do not comport with “the ordinary case” based on Minnesota’s history of prosecuting this offense. See United States v. Pate, 754 F.3d 550, 555 (8th Cir. 2014) (holding vehicular flight qualifies under the ACCA residual clause and rejecting argument that someone could be convicted “without any risk of injury by ‘pulling over, parking safely, and extinguishing [the car’s] lights,’ ” where the defendant “cite[d] no example of anyone prosecuted for this hypothetical violation, and [where this court’s] review of Minnesota cases revealfed] none”). Aside from McMillan’s conviction, there appear to have been only two relevant prosecutions of riot for the benefit of a gang; one was a juvenile adjudication involving a physical altercation between rival gangs, see In re Welfare of A.E., No. C4-00-717, 2000 WL 1809065, at *1 (Minn. Ct. App. Dec. 12, 2000), and the other was a second degree conviction for firing a handgun out of the window of a vehicle, see State v. Witherspoon, No. A12-1247, 2013 WL 3284272, at *1 (Minn. Ct. App. July 1, 2013). Thus, a review of Minnesota cases defeats McMillan’s second argument and further confirms that his riot conviction qualifies as a crime of violence.
The court is correct that it would have been permissible for the district court to have considered the Sentencing Commission’s then-pending amendment deleting the residual clause from § 4B1.2(a) had it reached this issue originally. See Lawin, 779 F.3d at 781. However, on remand, the court first should conclude, as a matter of law, that the conviction qualified as a crime of violence under the residual clause per the above analysis. Thus, McMillan’s total offense level will remain the same. I cannot see how a Sentencing Commission’s rule change—based at least in part on the widespread but ultimately incorrect assumption that Johnson invalidated the guidelines’ residual clause—could affect the district court’s views on the appropriateness of the sentence imposed. Thus, I do not agree that this is a situation where “it would be beneficial for the district court to consider an alternative argument in the first instance,” see Tovar v. Essentia Health, 857 F.3d 771, 779 (8th Cir. 2017) (quotation omitted), and instead believe that a remand will serve only to waste the district court’s valuable time. Accordingly, I would affirm the sentence.

. McMillan’s related argument—that, "when interpreting the [guidelines] residual clause, [courts] cannot rely on decisions expressly or implicitly overruled by the [Supreme] Court in Johnson"-likewise fails under Benedict, See 855 F.3d at 889 (relying on James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), and other ACCA residual clause cases invalidated by Johnson because these cases remain applicable in interpreting the guidelines’ residual clause); accord United States v. Cooper, No. 15-11546, 2017 WL 1487224, at *5 n.3 (11th Cir. April 26, 2017) (unpublished) ("Although Johnson invalidated [the residual] clause as unconstitutionally vague, [the] reasoning [of an ACCA case concerning the same offense] still applies here because we are interpreting 'nearly identical language’ in the Sentencing Guidelines, which are not subject [to] vagueness challenges.” (citations omitted)).