# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-1345

_____

United States of America

*Plaintiff - Appellee*

v.

Jesse Sierra, also known as Jesse Sierro

*Defendant - Appellant*

_____

No. 23-1368

_____

United States of America

*Plaintiff - Appellee*

v.

Dustin Sierra, also known as Dustin Sierro

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: December 12, 2023
Filed: February 28, 2024

_____

Before ERICKSON, MELLOY, and STRAS, Circuit Judges.
_____

ERICKSON, Circuit Judge.

A jury convicted Jesse Sierra of kidnapping, interstate domestic violence, assault resulting in serious bodily injury, assault by strangulation of a dating partner, and two counts of aggravated sexual abuse by force. Jesse appeals, asserting the district court[1] violated his Fifth and Sixth Amendment rights by excluding evidence of the victim's other trauma. He also argues the district court abused its discretion when it denied his motion for a new trial because the government suppressed exculpatory or impeachment material under Brady v. Maryland, 373 U.S. 83 (1963). Dustin Sierra was convicted of aiding and abetting both the kidnapping and interstate domestic violence. Dustin challenges the sufficiency of the evidence for both convictions and asserts the district court abused its discretion when it denied his motion to sever. We affirm.

I.    BACKGROUND

Jesse and E.W. began a troubled dating relationship sometime in 2016. In June 2019, Jesse was ordered to serve a probation violation sentence arising out of a prior assault on E.W. At the conclusion of his incarceration in Denver, Jesse returned to South Dakota. Two days later, on July 13, 2019, Jesse and his brother, Dustin, drove to a hotel in Rapid City, where E.W. was employed. E.W. greeted Jesse with a hug, and Jesse kissed her forehead. After a short conversation with Jesse, E.W. left the hotel with Jesse and Dustin.

Dustin dropped Jesse and E.W. off at a restaurant to eat. After picking up some groceries, Dustin returned to pick up E.W. and Jesse. The group headed to Rapid City's 24/7 testing center so that Jesse could comply with his probation terms.

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

When they arrived at the testing center parking lot, Jesse stayed in the vehicle, rather than going in for the testing. E.W. grew impatient and left the vehicle. Jesse followed her and persuaded E.W. to get back into the vehicle, promising to take her home. But rather than take E.W. home, Dustin started driving down a different road and away from E.W.'s home. E.W. protested and eventually tried to escape the moving car but Jesse pulled her back into the vehicle. Jesse then choked E.W. multiple times until she lost consciousness.

After arriving at the Sierra family property in Oglala, South Dakota, Jesse beat, raped, and threatened to kill E.W. Jesse then took E.W. to Dustin's residence, where Jesse again raped and beat E.W. while Dustin was in the home. Later, Dustin and Jesse drove E.W. from Oglala to Chadron, Nebraska intending to stay at their brother's house. But Jesse and Dustin's brother refused to let Jesse and E.W. stay at his house, so Jesse and E.W. stayed for four days at a motel in Crawford, Nebraska. In all, E.W. testified that over a seven-day period she was threatened, beaten, tortured, strangled, sexually abused, and raped numerous times by Jesse.

Prior to trial, the district court ruled on several motions. One motion centered around the defense's attempt to obtain E.W.'s medical and mental health records. In a second motion, Dustin moved to sever his trial from Jesse's trial. The district court denied both motions. Consistent with Rule 16 of the Federal Rules of Evidence, the government gave notice that it intended to call Krista Heeren-Graber as an expert witness. The notice indicated that Heeren-Graber would testify about "typical behaviors of an abused partner that may seem counterintuitive to lay persons and the reasons abused partners may engage in such counterintuitive behaviors."

Anticipating Heeren-Graber's testimony, Jesse sought to admit evidence about E.W.'s "other traumas," including past abortions, a miscarriage, and evidence that E.W. had discovered the body of her boyfriend who had committed suicide as "a reasonable explanation for her 'counterintuitive' behaviors [identified] by the [g]overnment's expert and/or a motive to fabricate."

The district court conditionally excluded evidence of E.W.'s other traumatic experiences. At the pretrial conference, the district court explained:

> But in light of the Zephier decision, if Ms. Heeren-Graber testifies and gives an opinion that victims of sexual abuse behave counterintuitively or that specific conduct is a characteristic of surviving sexual assaults or common effects experienced because of other traumas, which are all things that are listed on her notice of expert opinion, I think any of those things would open up the door to show this as another source of her behavior. So not knowing what Ms. Heeren-Graber is going to testify to, I'm going to reserve ruling until she's completed her testimony, and then I'll address this issue at that time.

Jesse's counsel asked about the sequencing of witnesses, expressing concern that if the victim testified before Heeren-Graber then he would be "a little hamstrung" during cross-examination. The district court responded that either Heeren-Graber could testify before E.W., or the government could agree that E.W. could be recalled after Heeren-Graber's testimony.

At trial, the government did not call Heeren-Graber. In response to the government's request to release E.W. from her subpoena, the court declined, preferring to wait to rule until after it had an opportunity to hear the testimony of the government's second disclosed expert, Dr. Fisher. The court explained that if Dr. Fisher "indicates that the depression, the PTSD, or other symptoms that [E.W.] experiences were caused by the strangulation, I think that opens up the door to whether there were other causes for those symptoms or other traumas that [E.W.] had in her life that would produce those symptoms." When Dr. Fisher did not discuss other traumas E.W. experienced in her life, the court released E.W. from her subpoena.

A jury found Jesse guilty of the six charged counts: kidnapping, in violation of 18 U.S.C. §§ 1201, 1153, and 2; aggravated sexual abuse by force, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A), and 1153; aggravated sexual abuse by force, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(B), and 1153; interstate domestic

-4-

violence, in violation of 18 U.S.C. §§ 2261(a)(2) and 2; assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6), 1153, and 2; and assault by strangulation of a dating partner, in violation of 18 U.S.C. § 113(a)(8), 1153, and 2. Dustin was found guilty of aiding and abetting kidnapping, in violation of 18 U.S.C. §§ 1201, 1153, and 2; and interstate domestic violence, in violation of §§ 2261(a)(2) and 2.

Jesse and Dustin moved under Federal Rule of Criminal Procedure 33 for a new trial, under Federal Rule of Criminal Procedure 29 for judgment of acquittal on all counts, and under Federal Rule of Criminal Procedure 34 for an arrest of judgment. The district court granted Jesse's motion for acquittal on the charge of aggravated sexual abuse by force in violation of 18 U.S.C. § 2246(2)(B) because there was no evidence that the sexual contact alleged under § 2246(2)(B) happened in Indian Country in the District of South Dakota. The court denied the remaining motions. The court sentenced Jesse to a term of life on the kidnapping and aggravated sexual abuse by force counts and concurrent terms of 120 months on the remaining counts. It sentenced Dustin to concurrent terms of 121 months on his counts of conviction.

## II. DISCUSSION

### A. Excluding Evidence of E.W.'s Other Traumas

Our analysis of a defendant's constitutional claim asserting the right to confront adverse witnesses and the right to introduce relevant evidence is the same. United States v. Brandon, 64 F.4th 1009, 1016 n.5 (8th Cir. 2023). We review the alleged constitutional violation *de novo*. United States v. Zephier, 989 F.3d 629, 635 (8th Cir. 2021).

As presented at trial, Jesse's defense was that he had a consensual relationship with E.W. while the government contended that Jesse had kidnapped and raped E.W. Jesse contends that E.W.'s credibility was a central focus at trial and not allowing

him to present evidence of E.W.'s prior traumatic experiences violated his rights under the Fifth and Sixth Amendments. It did neither.

Importantly, this case does not involve a request to introduce evidence of a prior sexual assault as an alternative explanation that the jury could consider when determining whether the difficulties the victim was experiencing were the result of a prior crime. Rather, Jesse sought to introduce evidence of E.W.'s other life experiences, such as past abortions, a miscarriage, and discovery of her boyfriend's dead body. He wanted to offer these prior traumatic life experiences to provide an alternative explanation for expert testimony that he claims implicated him. But the government did not offer expert testimony on how victims process or recollect traumatic events. Thus, there was nothing that Jesse's proffered evidence rebutted in the government's case.

Likewise, the government did not attempt to bolster E.W.'s credibility by showing that her reaction to certain situations was consistent with how victims often respond. Cf. Zephier, 989 F.3d at 636 (noting that the expert's testimony "bolstered [the victim's] credibility by showing that her reaction to the alleged crime was consistent with how rape victims often respond"). The only evidence offered came from E.W. herself, who stated she reacted to certain situations based on "survival mode" and made a reference to "battered woman syndrome." The government did not elicit the testimony about battered woman syndrome. The evidence came in as a response to defense counsel questioning E.W. about her motivations for acting friendly toward Jesse when he met her at work and later at dinner. In response to the testimony elicited by defense counsel, the government asked Jesse, "Can you help us understand what it was that made you feel like you still had to protect Jess after everything you'd been through?" E.W. responded, "I don't know. I don't know. Like, I'm not a doctor, but I'm pretty sure it's battered women's syndrome." E.W. never claimed that her behavior was consistent with how victims often respond nor did she go into detail about how individuals generally react to sexual abuse.

Here, we find no constitutional error in the exclusion of Jesse's proffered evidence for several reasons, including: (1) defense counsel was not seeking to offer evidence of E.W.'s past victimhood to corroborate his theory of defense—consent; (2) the government did not present expert testimony that bolstered E.W.'s credibility; (3) the proposed evidence did not rebut evidence presented by the government; and (4) the limited reference to battered woman syndrome was minimized with further questioning that revealed to the jury that E.W. self-diagnosed after her relatives told her she was suffering from battered woman syndrome, and neither E.W. nor her relatives had any medical training to qualify them to make a diagnosis.

## B. Brady Violations

Jesse also challenges the district court's denial of his motion for a new trial, asserting the government suppressed exculpatory or impeachment material under Brady, 373 U.S. 83. We review Jesse's claim for abuse of discretion. United States v. Smart, 60 F.4th 1084, 1095 (8th Cir. 2023). To have a cognizable claim under Brady, Jesse must establish that the government suppressed evidence favorable to him and material to the outcome of the trial. Id.

Jesse first argues the government failed to disclose E.W.'s claim of battered woman syndrome in contravention of Brady. Because Jesse has failed to persuade us that this information falls within the scope of Brady, there can be no Brady violation. See United States v. Corey, 36 F.4th 819, 822 (8th Cir. 2022) (explaining that "[e]vidence is favorable if it is directly exculpatory or useful for impeachment purposes"). But even if, as Jesse contends, E.W.'s claim of battered woman syndrome had been disclosed, he has not shown a reasonable probability that the result of this proceeding would have been different.

Jesse also argues the consensual asphyxiation evidence went undisclosed until it was too late for him to effectively use the information. But the record reflects Jesse's counsel had an opportunity to use it during cross-examination of E.W. and

Dr. Fisher. See United States v. Cody, 76 F.4th 1042, 1045 (8th Cir. 2023) (noting there was no violation because the defendant learned of the records during trial and had an opportunity to use them while cross-examining the witness). Further, as a willing participant in the alleged consensual asphyxiation, the evidence was always in the possession of and under the control of Jesse.

The district court did not abuse its discretion in denying Jesse's motion for a new trial.

### C. Severance

Dustin contends that his charges should have been tried separately from Jesse's charges because the testimony about E.W. being raped and beaten and the photographs showing her injuries were extremely prejudicial and would not have been admissible in his trial. We review the denial of a severance motion under the deferential abuse of discretion standard and will reverse only upon a showing of severe prejudice. To demonstrate severe prejudice, a defendant must show that if he had been tried separately, he would have had "an appreciable chance for an acquittal." United States v. Reichel, 911 F.3d 910, 915 (8th Cir. 2018) (citations omitted). A defendant can satisfy this high burden if he demonstrates that "his defense was irreconcilable with that of the codefendant or that the jury was unable to compartmentalize the evidence." United States v. Lewis, 557 F.3d 601, 609 (8th Cir. 2009). Dustin has not shown either.

We begin with the strong presumption for a joint trial when defendants are properly joined in an indictment. United States v. Benedict, 855 F.3d 880, 884 (8th Cir. 2017). The reason being, "[it] gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a just outcome." Lewis, 557 F.3d at 609. Severance is not required simply because the strength of the evidence against each defendant varies. Benedict, 855 F.3d at 884.

Jesse and Dustin did not present irreconcilable defenses. Most of the evidence would have been admissible in Dustin's trial if he was tried separately. There is no indication in this record that the jurors were unable to compartmentalize the evidence as it related to each offense or defendant. While Jesse faced more charges and his conduct was more egregious, as reflected in the sentences imposed, one way a district court can reduce the risk of prejudice when the evidence against one of the co-defendants is far more damaging than another is by carefully and thoroughly instructing the jury. The district court did just that in this case. Before any evidence was admitted, the court directed the jury to treat each defendant separately and consider each crime charged separately. In the final instructions, the court identified separately each offense, the elements of each offense, and which defendant(s) was charged with the offense. The verdict form plainly distinguished Jesse's counts from Dustin's counts. It also contained a separate box for each offense.

After thoroughly reviewing the record, this trial was not the "unusual case" where the efficiency of joinder was outweighed by difficulty for jurors to analyze separately the evidence presented on each count against each individual defendant. See id. at 885.

**D. Sufficiency of the Evidence**

Finally, Dustin challenges the sufficiency of the evidence for both his aiding and abetting the kidnapping of E.W. and aiding and abetting interstate domestic violence convictions. We "review sufficiency of the evidence in a criminal case *de novo*, viewing the evidence 'in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" United States v. Parsons, 946 F.3d 1011, 1013-14 (8th Cir. 2020) (quoting United States v. Morris, 723 F.3d 934, 938 (8th Cir. 2013)). "Reversal is warranted only where the Court concludes that no reasonable jury could find all the elements beyond a reasonable doubt." Id. (cleaned up).

Dustin claims the evidence of aiding and abetting kidnapping is legally insufficient because there was no evidence that E.W. told Dustin that she wanted to be let out of the vehicle. The jury heard testimony that E.W. attempted to leave the vehicle and Jesse pulled her back into the vehicle while Dustin was driving. E.W.'s testimony was more than sufficient to support the jury's guilty verdict for aiding and abetting her kidnapping.

Dustin challenges the sufficiency of the evidence for aiding and abetting interstate domestic violence by arguing there was no evidence that he took Jesse and E.W. to Nebraska or beyond the exterior boundaries of the Pine Ridge Indian Reservation. Dustin was charged pursuant to 18 U.S.C. § 2261, which provides:

> A person who causes a spouse, intimate partner, or dating partner to travel in interstate or foreign commerce or to enter or leave Indian country by force, coercion, duress, or fraud, and who, in the course of, as a result of, or to facilitate such conduct or travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b).

Viewed in a light most favorable to the jury verdict, the evidence established that on July 13, 2019, Dustin drove the vehicle that took Jesse and E.W. from Rapid City to Oglala on the Pine Ridge Indian Reservation. Later, Dustin drove E.W. and Jesse to Chadron, Nebraska, fully satisfying the requirements of § 2261.

## III. CONCLUSION

The judgment of the district court is affirmed.

_____

-10-